ALLEN, Judge.
Sam Puleo was adjudged in contempt of court by the Judge of the Criminal Court of Record of Hillsborough County and was ordered to serve six months in the county jail of Hillsborough County, Florida. An appeal was taken to the Circuit Court of the 13th Judicial Circuit of the State of Florida, in and for Hillsborough County, Florida. The circuit court entered an order on the 6th day of August, 1958, dismissing the appeal on jurisdictional grounds, and from this order, a petition for certiorari was filed in this court.
The petitioner states the point involved as follows:
“Does the Circuit Court, in and for Hillsborough County, Florida, have appellate jurisdiction to consider an appeal from the Criminal Court of Hillsborough County, Florida, from a conviction of contempt of court?”
Section 38.22, Florida Statutes, F.S.A., authorizes every court to punish contempts against it, whether such contempts be direct, indirect, or constructive, and in any such proceeding the court is authorized to proceed to hear and determine all questions of law and fact. The punishment imposed by a justice of the peace is limited to a fine of $20 or imprisonment of twenty-four hours, but no limitation appears upon the extent of punishment in other courts.
Chapter 932, Section 3, Florida Statutes, F.S.A., provides:
“Said courts, in the exercise of their criminal jurisdiction may punish for contempts as in the exercise of their civil jurisdiction, and the criminal courts of record shall possess, in this respect, the same powers as the circuit COUl'tS.”
The theory of the petitioner in this case is that since the judge of the criminal court of record limited the sentence to six months in jail, a sentence comparable to that often given for conviction of a misdemeanor, the circuit court would have jurisdiction on the appeal. This contention would be more logical if the court had had jurisdiction to mete out punishment for contempt not exceeding the punishment under our statute for misdemeanors, but such is not the case in this State. Many of our criminal statutes authorize the court, in felony cases, to sentence one convicted thereunder either to jail, to the state penitentiary, or to pay a fine. Among such statutes are F.S.A. § 799.01, relating to bigamy, and F.S.A. § 798.01 and § 798.02, relating to adultery and to lewd and lascivious conduct.
Justification for the petitioner’s position can be found in various cases outside of the State of Florida, but in such cases studied by this court, either the State Constitution or state statutory law provides the method for appeal. For insance, in the case of Cannon v. State, 1936, 58 Okl.Cr. 451, 55 P.2d 135, 138, the Court said:
“Section 25 of the Bill of Rights (article 2) abrogates the doctrine that proceedings to punish for contempts are sui generis. There is perhaps no other state with a Constitution containing a provision similar to this provision. So it may be said that this constitutional provision is sui generis.”
In the case of Holt v. McLaughlin, 1948, 357 Mo. 844, 210 S.W.2d 1006, 1007, it was held that there could be no appeal from a *41 judgment rendered on a finding of guilty of contempt in a proceeding for criminal contempt. The Court, in its opinion, said:
“And contempts may partake of both civil and criminal nature. Carder v. Carder, supra [Mo.App., 61 S.W.2d 388], The contempt involved in the case of State ex rel. Chicago, B. & Q. R. Co. v. Bland, supra [189 Mo. 197, 88 S.W.2d 28], is an example. In that case one Gildersleeve had been adjudged guilty of contempt in the circuit court for violating an order enjoining him from engaging in a particular business. The _ injunction order had been entered by the circuit court for the protection of the rights of relator who was plaintiff in the circuit court injunction proceeding. The contempt judgment was remedial and primarily for the benefit of relator with the purpose of preventing defendant’s future encroachments upon the rights of relator as protected by the injunction order. So the contempt was primarily civil in nature and, although the judgment in the contempt proceeding also involved the dignity of the court below and was in that respect criminal, the contempt judgment was held ap-pealable.”
The Court further stated that since no provision was^made for an appeal by statute for a criminal contempt, a full review of such proceedings would be afforded by habeas corpus.
In Florida Cent. & P. R. Co. v. Williams, 1903, 45 Fla. 205, 33 So. 991, 992, the Supreme Court held that an appeal would not lie from an order of the circuit court merely imposing a fine for contempt for the violation of an injunction granted in a chancery cause. The Court, in its opinion, said:
“In Caro v. Maxwell, 20 Fla. 17, it was held that an appeal does not lie from an order of the circuit court imposing a fine for a contempt in violating an injunction. The question was directly involved in that case, and many authorities are cited to sustain the proposition. In Palmer v. Palmer, 28 Fla. 295, text 300, 9 So. 657, 658, the court refers to the rule announced in Caro v. Maxwell, and says: ‘We may remark that, where the judgment is void as for want of jurisdiction of the court, the remedy is by habeas corpus, and where it is merely irregular or erroneous there is no appeal or other right of review. Church on Ha-beas Corpus, c. 23. Judgments for contempt cannot be reviewed by appeal or writ of error for mere irregularity or error. They can be assailed only for illegality, and this, it seems, must be by habeas corpus.’ In Ex parte Senior, 37 Fla. 1, 19 So. 652, 32 L.R.A. 133, it was held that habeas corpus is an appropriate remedy for testing the question of the jurisdiction of a circuit court to punish a witness for contempt in refusing to answer questions. There the case of Caro v. Maxwell is again referred to as holding that a contempt order will not be reviewed on appeal or writ of error. See, also, Ex parte Edwards, 11 Fla. 174. The clear effect of these decisions is to hold that an order adjudging a party guilty of contempt cannot be reviewed by any other court for mere errors or irregularities, that generally no appeal lies from such an order, but that the question of jurisdiction to make it can be inquired into by writ of habeas corpus; and our habeas corpus statute (section 1775, Rev.St.1892 [F.S.A. § 79.06]) seems to recognize habeas corpus as an appropriate remedy, by declaring the extent of the relief to be granted where the party is imprisoned for contempt. There has been no statutory extension of the right of appeal since these decisions were rendered, and we must hold that the appeal here taken comes within the rule annouced in Ca *42 ro v. Maxwell, and must therefore be dismissed.
“There are cases which hold that where contempt proceedings are resorted to in the ordinary course of chancery practice as a means of enforcing the payment of money decreed to a complainant, or to compel the performance of some act required by a decree to be done for his benefit, an appeal will lie from the decree made therein. To this class of cases Sanchez v. Sanchez, 21 Fla. 346, may be assigned. * * * ”
In McCall v. Lee, 1913, 66 Fla. 14, 62 So. 902, the Court held that an appeal would not lie from an order punishing a party for contempt for a violation of an injunction granted in a chancery case, and the remedy, if any, would he habeas corpus for an illegal imprisonment.
The State forcibly argues that contempt is not a crime even though certain con-tempts are designated by the courts as criminal in nature. It states:
“ * * * Instead of being a crime, contempt is ‘sui generis’ and it is not strictly either civil or criminal even though courts have classified them as ‘civil’ and ‘criminal.’ We quote from Dangel on Contempt, page 5, Section 12 (a text cited with approval by the Supreme Court of Florida in Lewis v. Lewis, 78 So.2d 711, 712):
“ ‘Proceedings for contempt are sui generis (of their own class) in their nature and not strictly either civil or criminal, as those terms are commonly used. But courts have classified and termed them, “civil” and “criminal.” ’ ”
The proper forum for review of contempt orders in Florida and elsewhere has been a matter of deep concern, as will be seen from the following citation: 12 Am. Jur., Contempt, § 80, page 445, which is as follows:
“The general rule at common law does not permit a proceeding for contempt to be revised by a higher court upon an appeal or writ of error. The right of review in this country, however, has gradually been extended by either statute or judicial decision until now generally a judgment in contempt can be appealed from by appeal or error proceedings, habeas corpus, or prohibition. * * * ”
See also 6 Fla.Jur., Contempt, § 58, page 616; 4 F.L.P., Contempt § 27, page 623; and also an excellent article on “Contempt of Court in Florida,” 9 Miami L.Q. page 281, et seq.
In Miller v. Miller, 1926, 91 Fla. 82, 107 So. 251, the Supreme Court of Florida held that an appeal would not lie from a commitment or fine for violation, or for refusal to comply with, an order of the court made in due course and within the jurisdiction of the court. In Jones v. King, 1935, 120 Fla. 87, 162 So. 353, it was held that habeas corpus proceedings afforded the only proper remedy.
In Seaboard Air Line Ry. v. Tampa Southern Ry., 1931, 101 Fla. 468, 134 So. 529, the apparent holding was to the effect that civil contempt actions were reviewable, but probably not so in criminal contempt actions.
In Pennekamp v. Circuit Court, etc., 1945, 155 Fla. 589, 21 So.2d 41, the Court held that a contempt proceeding was criminal in nature and that appeal, not certiorari, would be the proper method to review a contempt judgment imposing only a fine as punishment since habeas corpus was not an applicable remedy where the judgment did not detain the contemnors. In this case, John D. Pennekamp and the Miami Herald Publishing Company were found in contempt of court, and doubting the proper method to obtain review, they entered an appeal and also applied for a writ of certiorari. In its decision, the Court said:
*43 “We are without precedent in Florida on this question, inasmuch as we have reviewed no judgment in contempt like this. The rule is, that ordinarily certiorari will not lie where there is another adequate remedy. Kilgore v. Bird, 149 Fla. 570, 6 So.2d 541.
“Heretofore we have reviewed judgments in contempt by habeas corpus. Such remedy is not applicable to this case inasmuch as the judgment does not detain the appellants. Contempt proceedings are criminal in nature. Rule 37 of this Court provides that appeals shall he taken in criminal cases in conformity to Section 290, Florida Criminal Procedure Act, F.S.A. § 924.-11.
“We hold that appeal is the proper method to review the judgment. The motion to dismiss the appeal is denied.”
In the case of South Dade Farms v. Peters, Fla.1956, 88 So.2d 891, 899, a petition for certiorari was filed in the Supreme Court seeking reversal of a contempt decree in a proceeding in the Circuit Court of Dade County where the petitioners were adjudged in contempt of court. In its opinion, the Supreme Court said:
“This leads us then to a consideration of the classes of contempt and some of the distinctions between the recognized classes. We take note of the fact that at the initial hearing on the response to the rule to show cause in the case before us, it was ruled by the trial judge that this was a civil contempt proceeding. The matter was tried on that basis. The distinction between civil and criminal contempt is of some consequence. The differences are clearly delineated by the Supreme Court of the United States in Gompers v. Buck’s Stove & Range Co., supra [221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797], and are recognized by this court in Seaboard Air Line R. Co. v. Tampa Southern R. Co., supra. Fundamentally, a criminal contempt proceeding is between the public and the defendant. It is not directly a part of the original cause. It involves punishment for an offense against the court itself as distinguished from the commission of an act in derogation of the rights of a party to the cause. A civil contempt proceeding naturally involves in some measure a transgression against the dignity of the court and the prestige of its order, however, it is in actuality a proceeding between the parties to the cause and is instituted and tried as a part of the main case. It should be considered more nearly in the nature of a civil proceeding between the parties, and to the extent appropriate rules governing civil causes should apply. When a judgment or decree in favor of one party is disregarded or violated by another party to the injury of the former, it is then appropriate for the injured party to call upon the court to exercise its contempt powers in the enforcement of its decrees for the benefit of the party in whose favor the decree has been entered.
* * * * * *
“This court very early in its history in some measure recognized the inherent power of a court of equity to assess damages in favor of an injured party to be paid by a party violating a decree. See Ex parte Edwards, 11 Fla. 174. We are of the view that in a proper case there is adequate precedent to support the imposition of a ‘compensatory fine’ in civil contempt proceedings.”
In the case of Alger v. Peters, Fla.1956, 88 So.2d 903, it was noted that the contempt decree imposing the “compensatory fine” was interlocutory in nature, that the appropriate method of obtaining review thereof was by petition for writ of cer-tiorari but that direct appeal from the decree would, under applicable statute, be regarded by the reviewing court as a petition for certiorari.
*44 The Pennekamp case, supra, held that in the case of a fine in criminal contempt, appeal was proper since habeas corpus would not lie. After the holding of the Supreme Court of Florida in the Penne-kamp case, the apparent result was that in civil contempt, appeal would be available as an appellate remedy as it would also be in the case of fine for criminal contempt, since habeas corpus would not be available in the case of a fine as it was where confinement was the result of a contempt order.
In the case of State ex rel. Mitchell v. Kelly, Fla.1954, 71 So.2d 887, 897, the Supreme Court decided the validity of a contempt order where the petitioner was sentenced, in a habeas corpus proceedings. Judge Barns, in a special concurring decision, stated:
"This habeas corpus proceeding instituted in this court is a collateral attack on a judgment of criminal contempt. The judgment is final in its nature and the appropriate method of procuring review is by appeal. The necessity of resort to habeas corpus no longer exists.”
See Ex parte Senior, 1896, 37 Fla. 1, 19 So. 652, 32 L.R.A. 133; Pennekamp v. Circuit Court of Dade County, 1945, 155 Fla. 589, 21 So.2d 41.
In Clein v. State, Fla.1950, 52 So.2d 117, an appeal was taken by Clein, who had refused to reveal the sources to a grand jury of certain information he had printed, and he was held in contempt and ordered to confinement, from which he appealed. The record does not reveal whether any attack was made by the State on the procedure followed, so apparently, the appeal was acceptable.
From a review of the later cases decided by the Supreme Court of Florida, we reach the conclusion that appeal is proper in contempt cases.
We pass from the propriety of the use of appeal to a determination of the question of whether appeal should have been taken to the Second District Court of Appeal instead of the Circuit Court of Hillsborough County. We have heretofore stated that the appeal was taken in 1958, therefore subsequent to July 1, 1957, the effective date of Article V of the Constitution of the State of Florida, adopted November 6, 1956, F.S.A.
The appellate jurisdiction of the circuit court is found in Article V, Section 6(c), and is as follows:
“ * * * They shall have final appellate jurisdiction in all civil and criminal cases arising in the county court, or before county judges’ courts, of all misdemeanors tried in criminal courts of record, and of all cases arising in municipal courts, small claims courts, and courts of justices of the peace. The circuit courts and judges shall have power to issue writs of mandamus, injunction, quo warranto, cer-tiorari, prohibition, and habeas corpus, and all writs necessary or proper to the complete exercise of their jurisdiction.”
The jurisdiction of the district courts of appeal, as set forth in art. V, Section 5(c), is as follows:
“Appeals from trial courts in each appellate district, and from final orders or decrees of county judge’s courts pertaining to probate matters or to estates and interests of minors and incompetents, may be taken to the court of appeal of such district, as a matter of right, from all final judgments or decrees except those from which appeals may be taken direct to the supreme court or to a circuit court.”
The jurisdiction of the Supreme Court set forth in art. V, Section 4(b), is as follows:
“Appeals from trial courts may be taken directly to the supreme court, as a matter of right, only from judg *45 ments imposing the death penalty, from final judgments or decrees directly passing upon the validity of a state statute or a federal statute or treaty, or construing a controlling provision of the Florida or federal constitution, and from final judgments or decrees in proceedings for the validation of bonds and certificates of indebtedness. The supreme court may directly review by certiorari interlocutory orders or decrees passing upon chancery matters which upon a final decree would be directly appealable to the supreme court. In all direct appeals and interlocutory reviews by cer-tiorari, the supreme court shall have such jurisdiction as may he necessary to complete determination of the cause on review.”
It will be observed from the foregoing enumeration of appellate powers given to the Supreme Court, to the courts of appeal and to the circuit courts, that all appeals from trial courts must be taken to the courts of appeal unless, under the Constitution, such appeal may be taken direct to the Supreme Court or to a circuit court.
There is no question but that the Criminal Court of Record of Hillsborough County is a trial court. It is clear that the appeal could not be taken to the Supreme Court of the State. The appellate jurisdiction of the circuit court with reference to appeals from the criminal court of record is limited to “all misdemeanors tried in criminal courts of record.”
We had before us in the case of State v. J. K., Fla.App.1958, 104 So.2d 113, the question of whether an appeal from the juvenile court should be taken to the circuit court or to the Second District Court of Appeal, and we held that, as we construed a juvenile court to be a trial court, under the applicable provisions of the Constitution, appeal would lie to the district court of appeal.
The State, in its reply brief in the instant case, cogently answers the contention of the petitioner that the trial of the petitioner before the Judge of the Criminal Court of Record of Hillsborough County was a trial of a misdemeanor. It states:
“The contempt charged against the petitioner in the Criminal Court of Record was that he attempted to influence a juror in that court. What if he had been convicted in the Circuit Court of Hillsborough County for attempting to influence a juror in that court? Would ' the petitioner claim that he had been convicted of a misdemeanor despite said Circuit Court’s lack of jurisdiction to try misdemeanors? The Circuit Court undoubtedly has the jurisdiction and authority to convict a person for such a contempt, but it has no jurisdiction over misdemeanors. It necessarily follows that contempt is not a misdemeanor. And what of a contempt committed against a District Court of Appeal or against the Supreme Court, each of which has the unquestionable power to convict for contempt but neither of which has trial jurisdiction over misdemeanors. The fact that the Circuit Court, a District Court of Appeal and the Supreme Court all have jurisdiction over contempts committed against them, coupled with the fact that neither of them has jurisdiction to try misdemeanors, is conclusive of the fact that contempt is not a misdemeanor.”
In the case of Ex parte Crews, 1937, 127 Fla. 381, 173 So. 275, the Supreme Court, in effect, held that F.S.A. § 775.07 is not applicable to contempts. In this case Crews was sentenced by the circuit court to serve 120 days in the county jail for contempt of that court. He contended that he could not be imprisoned for more than 90 days. The Supreme Court held that there was no such limitation on the time which a circuit court could sentence a party to jail for contempt.
In Demetree v. State, Fla.1956, 89 So.2d 498, 501, the Supreme Court stated that the courts are clothed with power to punish *46 contempt without the necessity of referring the issues to another tribunal or to a jury in the same tribunal.
The Supreme Court of the United States, in Myers v. United States, 264 U.S. 95, 104, 105, 44 S.Ct. 272, 273, 68 L.Ed. 577, 580, said:
“While contempt may be an offense against the law and subject to appropriate punishment, certain it is that since the foundation of our government proceedings to punish such offenses have been regarded as sui gen-eris and not ‘criminal prosecutions’ within the Sixth Amendment or common understanding.”
For the reasons above stated, we hold that the appeal should have been taken to the Second District Court of Appeal and not to the circuit court.
Petition for certiorari denied.
KANNER, C. J., and SHANNON, J., concur.